Tony ARROYO, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–98–00920–CR

Court of Appeals of Texas,
San Antonio.

Nov. 24, 1999.

Stephanie L. Stevens, Robert Porter, San Antonio, for Appellant.

Enrico B. Valdez, Asst. Crim. Dist. Atty., San Antonio, Betty Marshall, Asst. State Pros. Atty., Austin, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

We grant reconsideration of this case in light of the State's Petition for Discretion-

ary Review. We withdraw our opinion of October 6, 1999 and substitute the following opinion in its place.

Tony Arroyo appeals his conviction of assault causing bodily injury. Arroyo contends that the trial court erred when it presented an instruction to the jury that did not contain the instruction mandated by *Geesa v. State.* He also raises eleven other points of error. Arroyo's first point of error is dispositive of the case. We reverse the trial court's judgment and remand the case to the trial court for a new trial without reaching the merits of the remaining eleven points of error.

### BACKGROUND

The State charged Arroyo by information with the offense of assault causing bodily injury under Texas Penal Code Section 22.01(a)(1). A jury found Arroyo guilty on the charge of assault causing bodily injury. The trial court sentenced Arroyo to one year confinement and imposed a fine of $4000.

### DISCUSSION

In his first point of error, Arroyo argues that the trial court erred when it presented an instruction to the jury that did not meet the requirements of *Geesa v. State.* *See Geesa v. State,* 820 S.W.2d 154 (Tex. Crim.App.1991). The charge to Arroyo's jury read, in part:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proven beyond a reasonable doubt. The fact that he has been arrested, confined, or otherwise charged with the offense gives rise to no inference of guilt at his trial. In case you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not Guilty."

The trial court denied Arroyo's request for including two additional sentences that are required under *Geesa.* These sentences are:

> The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

*Geesa,* 820 S.W.2d at 162. The Court of Criminal Appeals has stated that "this instruction on 'reasonable doubt' ... *shall be submitted to the jury in all criminal cases, even in the absence of an objection or request by the State or the defendant*" regardless of the evidence in question. *Id.* (emphasis added). The Court of Criminal Appeals' recent opinion in *Fields v. State* held that a *Geesa* instruction is not required to be given at *punishment* phase, "absent a request." *See Fields v. State,* 1 S.W.3d 687 (Tex.Crim.App.1999). The error complained of in the present case stems from the guilt-innocence phase, and a request was made. According to *Fields,* the instruction set out in *Geesa* "applies *specifically* to the guilt-innocence phase of a trial." *Id.* (emphasis added).

The requirements for this instruction in modern criminal Texas practice derive from two general sources. First, the Supreme Court of the United States has recognized the importance of an understandable charge that instructs the jurors properly on the standard of reasonable doubt. Second, the Texas Court of Criminal Appeals has stated that this instruction must be included in jury instructions.

### 1. Origins of the Geesa Instruction

### a. Supreme Court Jurisprudence

■ Courts and authors of law review articles have already reported thoroughly on the origins of the reasonable doubt

standard.[1] The Supreme Court tells us the requirement that guilt be established by proof beyond a reasonable doubt dates from at least the dawn of the Republic, if not ancient times. *See In re Winship,* 397 U.S. 358, 362, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Supreme Court has interpreted the United States Constitution as requiring proof of the accuseds guilt beyond a reasonable doubt. *See, e.g., Holland v. United States,* 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150 (1954), *Miles v. United States,* 103 U.S. 304, 26 L.Ed. 481 (1881). This burden, grounded in the Due Process Clause of the United States Constitution, is implicit in our system of criminal justice, and forms the "prime instrument" for reducing the risk of convictions resting on factual error. *See Winship,* 397 U.S. at 364, 90 S.Ct. 1068; *Davis v. United States,* 160 U.S. 469, 488, 16 S.Ct. 353, 40 L.Ed. 499 (1895). "[T]he reasonable-doubt standard is indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.'" *Winship,* 397 U.S. at 364, 90 S.Ct. 1068. (citations omitted).

Our reading of the Texas Court of Criminal Appeals' directive in *Geesa* is that the jury must receive *this particular* instruction on the reasonable doubt standard in order to reach this state of certitude. *See Geesa,* 820 S.W.2d at 156–57, 161–62 (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954)). In *Holland,* the Supreme Court stated that "where the jury is *properly instructed* on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." *Holland,* 348 U.S. at 139–40, 75 S.Ct. 127. We cannot see how the Supreme Court was cautioning trial courts *against* giving proper instructions on reasonable doubt. *See Paulson v. State,* 991 S.W.2d 907, 915 (Tex.App.-Houston [14th Dist.] 1999, pet. granted). We *can* see how the Supreme Court was cautioning trial courts against giving an instruction on reasonable doubt *and* an instruction on circumstantial evidence. In *Jackson,* the Supreme Court did not mandate that a jury instruction on reasonable doubt be given to the jury. The concurring opinion by Justice Stevens, joined by Chief Justice Burger and then-Justice Rehnquist, stated in part that *"properly instructed* juries act rationally. . . . [They] *will conscientiously obey and understand the reasonable-doubt instructions they receive* before retiring to reach a verdict, and therefore . . . will . . . provide the necessary bulwark against erroneous factual determinations." *Jackson,* 443 U.S. at 333, 99 S.Ct. 2781 (Stevens, J., concurring) (emphasis added).

We note that the Fourteenth Court of Appeals does not reach the same conclusions regarding *Jackson* and *Holland. See Paulson,* 991 S.W.2d at 915–16 (indicating that the court had "difficulty recognizing" that either case "implicated the requirement of a full definitional instruction to the jury on reasonable doubt" (quoting *Geesa,* 820 S.W.2d at 161)). Based on the firm underpinnings that support the reasonable doubt standard, and the role the *Geesa*-mandated instruction plays in the criminal justice system, the instruction should be given.

**b. Mandate from the Court of Criminal Appeals**

■■■ The instruction required under *Geesa* properly casts the required burden of production in light of the definition of reasonable doubt, helping the jurors to understand effectively how the two are linked. "The law does not require a defen-

---

1. *See, e.g., Davis v. Allsbrooks,* 778 F.2d 168 (4th Cir.1985); *Paulson v. State,* 991 S.W.2d 907, 909–11 (Tex.App.—Houston [14th Dist.] 1999, pet. granted); Jessica N. Cohen, *The Reasonable Doubt Jury Instruction: Giving Meaning to a Critical Concept,* 22 AM. J.CRIM. L. 677, 679–81 (1995); George M. Dery III, *The Atrophying of the Reasonable Doubt Standard: The United States Supreme Court=s Missed Opportunity in* Victor v. Nebraska *and its Implications in the Courtroom,* 99 DICK L.REV. 613, 616–18 (1995).

dant to prove his innocence or produce any evidence at all." *Geesa*, 820 S.W.2d at 162. By implication, the law *does* require the state to introduce evidence of the defendant's guilt. "The presumption of innocence," we are told by *Geesa*, "is *sufficient to acquit the defendant*," unless the jurors believe beyond a reasonable doubt that the defendant is guilty. *Id.* (emphasis added). If the state fails to introduce sufficient evidence of the defendant's guilt, and fails to overcome the initial presumption of innocence, he may be acquitted. The *only acceptable way to overcome this presumption* is if "the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of *all the evidence in the case.*" *Id.* (emphasis added). In *Reyes v. State*, the Court of Criminal Appeals reversed and remanded for a new trial a case in which the defendant did not object to the omission of the *Geesa*-mandated jury instruction. *See Reyes v. State*, 938 S.W.2d 718, 720–21 (Tex.Crim.App.1996).

> Our holding in *Geesa, which the State requested,* was reached only after a great deal of time and careful deliberation. The holding is clear and unambiguous and *we will not undermine it today.* To that end, we hold *Geesa* created an *absolute systemic* requirement that an instruction on reasonable doubt be submitted to the jury in all cases where the burden of proof requires the jury to find guilt beyond a reasonable doubt. . . .

*Reyes*, 938 S.W.2d at 721 (emphasis added); *see Kieschnick v. State*, 911 S.W.2d 156, 161 (Tex.App.—Waco 1995) (reversing and remanding for new trial a case, in which the jury charge did not contain the reasonable doubt instruction mandated by *Geesa*, in light of *Marin v. State*, 851 S.W.2d 275, 279–80 (Tex.Crim.App.1993)).

### c. *Keeping the Mandate Intact*

■ The lessons from *Jackson, Holland,* as well as the Court of Criminal Appeals itself, remain viable to keep the Texas Court of Criminal Appeals' *Geesa* mandate intact. A jury charge must contain this instruction in criminal trials during the guilt-innocence phase, at least if it is properly requested as it was in this case. The Court of Criminal Appeals recognized in *Geesa* that "until today, 'reasonable doubt' has *never been defined in Texas, either statutorily or in the charge to the jury.*" *Geesa*, 820 S.W.2d at 161 n. 10 (emphasis added) (explaining that the statutory incarnation of a reasonable doubt explanation in effect at the time of the *Geesa* decision was *non-definitional* in nature).

### 2. *Implications of* Geesa *for Modern Criminal Practice in Texas*

Our understanding of the Court of Criminal Appeals mandate in *Geesa* is that the court intended to provide an instruction that has the approval of the court itself, and if the instruction is given, will not be a source of contention on appeal by a defendant who is properly convicted under it. Trial courts are well-served by a standard instruction approved by the Court of Criminal Appeals. With such an instruction, there is no question about the adequacy of the charge that can be raised by the defendant or the state. If the *Geesa* language is allowed to be modified at will, not only is *Geesa* emasculated, but we are back to endless appeals on the adequacy of the instruction that was actually given. It is for a similar reason that the Texas civil courts, with the approval of the Texas Supreme Court, have adopted standardized pattern jury charges. Only criminal appellate lawyers enjoy the uncertainty of a case-by-case analysis, of modifications and alterations to what the Court of Criminal Appeals has given us as appropriate language. But, apart from policy reasons, a lack of clarity supports the reasoning that this truncated charge *did* cause harm.

Consider the result when sentences are extracted from this mandated instruction. The third and fourth sentences of the first paragraph (those that are missing in Ar-

royo's instruction), provide important corollaries and clarification to other portions of the *entire* instruction. Recall the *Geesa* instruction and the sentences that the trial court omitted from Arroyo's jury instruction:

> *Sentence contained early in the jury instruction:*
>
>> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proven beyond a reasonable doubt.
>
> *Missing sentences:*
>
>> The law does not require a defendant to prove his innocence or produce any evidence at all.
>>
>> The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.
>
> *Sentence contained later in the jury instruction:*
>
>> The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

The first missing sentence tells the jury *affirmatively* that the defendant *need not bring forth any proof whatsoever.* If the jury were confronted only with what the prosecution *must* "do," it would know only that if the prosecutor fails to "do so," then the defendant must be acquitted. But, the jury would not know what, if anything, the defendant must "do." In order to achieve fairness and avoid the possibility that a juror might consider the defendant's lack of participation in the evidentiary stage of the trial as *detrimental,* the first missing sentence clarifies the burden of production (or, more appropriately, the *non*-burden of production). The defendant need not "do" anything.

The second missing sentence tells the jury *affirmatively* that a defendant may be acquitted solely on the basis of his *presumed innocence.* Although the instruction later tells the jury that it must acquit the defendant if the prosecution fails to prove every element of the crime, the second missing sentence serves as an important safeguard: The presumption of innocence alone is sufficient to acquit the defendant, unless a particular condition is met by the jurors. The language that follows in the second missing sentence ("unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt") is similar to the language early in the instruction ("unless each element of the offense is proven beyond a reasonable doubt"). Yet, we believe this proposition in its proper context, that the presumption of innocence alone is sufficient to acquit the defendant, serves as an important reminder to the jury. The jury is reminded that the presumption of innocence with which the defendant begins the trial (and carries until judgment) serves as the basis for an acquittal, *unless,* the jurors are satisfied beyond a reasonable doubt of the defendant's guilt.

Jury instructions that are less than clear are an obstacle to achieving fairness at trial. Incomplete or unclear instructions, when delivered to a panel of lay individuals inexperienced in the legal process and its language, can lead to unjust results.[2] The

---

2. *See* Amiram Elwork et al., *Juridic Decisions: In Ignorance of the Law or in Light of It?*, 1 Law & Hum. Behav. 163, 165 (1977) (explaining that the language of lawyers and judges may be foreign to a lay person serving as jurors); Geoffrey P. Kramer & Dorean M. Koenig, *Do Jurors Understand Criminal Jury Instructions? Analyzing the Results of the Michigan Juror Comprehension Project*, 23 U. Mich. J.L. Re-

form 401, 431 (1990); Walter W. Steele, Jr. & Elizabeth G. Thornberg, *Jury Instructions: A Persistent Failure to Communicate*, 67 N.C. L.Rev. 77, 109 (1988) (indicating that empirical research reveals that "juror comprehension of their instructions is pitifully low"); Eugene R. Sullivan & Akhil R. Amar, *Jury Reform in America—A Return to the Old Country*, 33 Am.Crim. L. Rev. 1141, 1143

instruction announced in *Geesa*, which has since been tested (and has endured) in Texas for over eight years and in the federal system under a similar variant for much longer, fosters juror understanding and comprehension. The *Geesa* court intimates that the reasonable doubt standard in the abstract may require clarification. *See Geesa*, 820 S.W.2d at 161 n. 11. (discussing the importance of examining the definition of "reasonable doubt" in the context of other burden of proof definitions in order to understand the definition of "reasonable doubt" more clearly). The Court of Criminal Appeals understood the difficult and complex nature of a jury instruction regarding reasonable doubt when it adopted, in part, the federal model in *Geesa*. *See id.* at 162 (combining the nondefinitional provision of the Texas Penal Code with the "instructions used in the federal system") (citations omitted).

The Court of Criminal Appeals has provided the courts of Texas with a uniform, clear, coherent, and jury-friendly set of instructions. This court cannot improve on them. We doubt that permitting each trial judge to craft their own instructions is a wise step. "The trial court that tries innovation with this instruction does so at its own peril." *Fletcher v. State*, 993 S.W.2d 774, 776 (Tex.App.—Texarkana 1999, no pet.).

### 3. Application

#### a. Preservation of Error

Arroyo objected to the omission and requested inclusion of the sentences in question. The trial court had the opportunity to correct the omission. Failure to do so was error. Having found error, we consider the matter of harm.

### b. Harm Analysis

#### (1) STANDARD FOR REVIEWING HARM

We note that Arroyo's case is distinguishable from *Reyes*. *Reyes* addressed a situation in which the trial court omitted the entire *Geesa* instruction. *See Reyes*, 938 S.W.2d at 721; *see also State v. Toney*, 979 S.W.2d 642, 644–45 (Tex.Crim.App. 1998) (stating that "if the jury is given a partial or substantively correct charge on reasonable doubt, then any error therein is subject to harm analysis under *Abdnor*, *Almanza*, and [Article 36.19 of the Texas Code of Criminal Procedure]"); *see generally* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981); *Abdnor v. State*, 871 S.W.2d 726 (Tex.Crim.App.1994); *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984). *Toney* subjected the complained-of error to egregious harm analysis because the appellant failed to complain of the omission at trial. *See Toney*, 979 S.W.2d at 645.

More recently, the Texarkana Court of Appeals visited the question of a reasonable doubt instruction that varied from that mandated by *Geesa*. *See Fletcher*, 993 S.W.2d at 776–77. Because Fletcher preserved error by requesting the *Geesa* instruction at trial, the court of appeals was required to reverse the trial court's judgment if this error was calculated to injure him. *See id.* at 776 (citing *Almanza*, 686 S.W.2d at 171); *see also* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981).

(1996) (reporting that studies have revealed that juries may not understand their instructions); Robert L. Winslow, *The Instruction Ritual*, 13 HASTINGS L.J. 456, 456 (1962) (suggesting the belief that a jury of lay people can hear instructions and understand them is fiction in light of the fact that lawyers and judges who crafted those instructions have spent years of study to achieve a level of understanding); *see also* Kimball R. Anderson & Bruce R. Braun, *The Legal Legacy of John Wayne Gacy: The Irrebuttable Presumption* *That Juries Understand and Follow Jury Instructions*, 78 MARQ. L.REV. 791, 791 (1995) (characterizing the inability or failure of juries to comprehend instructions from judges as "polysyllabic mystification"); Scott Burgins, *Jurors Ignore, Misunderstand Instructions*, A.B.A. J., May 1995, at 30; *cf.* Robert P. Charrow & Veda R. Charrow, *Making Legal Language Understandable: A Psycholinguistic Study of Jury Instructions*, 79 COLUM. L.REV. 1306, 1307–08 (1979).

The court explained further that "[t]he presence of *any harm, regardless of degree,* is sufficient to require reversal." *See id.* (emphasis added) (citing *Abdnor,* 871 S.W.2d at 732). The *Fletcher* court concluded: "We are not so persuaded" that Fletcher "suffered *some actual harm* as a consequence of the charging error." *Id.* (emphasis added).

The Fourteenth Court of Appeals, in reviewing whether *an omitted definition of reasonable doubt* warranted reversal, sought to discern whether some actual harm occurred. *See Paulson,* 991 S.W.2d at 916; *see also Arline v. State,* 721 S.W.2d 348 (Tex.Crim.App.1986). Although the court "reluctantly" sustained the point of error regarding the omitted instruction, the court conceded that the Court of Criminal Appeals has held that an omission of the definitional instruction actually "defies meaningful analysis by harmless error standards." *See Paulson,* 991 S.W.2d at 917 (citing *Toney,* 979 S.W.2d at 644).

(2) ARROYO'S CASE REVEALS HARM

■ An improper jury charge undercuts counsel's ability to argue *effectively* about the law of the case. Of course, Arroyo *can* argue what is not expressly in the charge. *See State v. Renteria,* 977 S.W.2d 606, 608 (Tex.Crim.App.1998). But, the argument is without the authority of the court having pronounced what is the law. Lawyers can argue many things; they are advocates. They may, or may not, be accurate in what they say and they may or may not be believed. The trial court in this case instructed the jury that "the law of the case *you will receive from the Court,* which is given you herein, and [for you to] be governed thereby." The jury *was not obligated to accept* any of Arroyo's statements or argument that could otherwise be construed to "make up" for, or "cure," the improperly omitted jury instruction. They were, however, obligated to accept the court's instructions. That's a big difference.

■ The omission from the jury charge caused harm. We reach this conclusion by examining the entire record; in particular, we are mindful of voir dire, arguments of counsel, evidence, and the court's charge to the jury. We note that before voir dire, the court explained various concepts underlying the reasonable doubt standard and the burden of production. Specifically, the court *did not say* that the defendant need not produce any evidence; the court stated instead that the Defendant "is not required to prove himself or herself innocent," the Defendant's failure to testify was not evidence of guilt, and that the "burden of proof...never shifts at any time to the Defendant." Although these instructions are true, they do not reach the essence of the missing *Geesa* instruction. These instructions from the court occurred before voir dire, on October 12, 1998. The jury retired for deliberations on October 14, 1998. An essential tenet of the criminal justice system should not be left to the vagaries of the jurors' memories. We hold, as the Court of Criminal Appeals did in *Geesa,* that a matter such as "The law does not require a defendant to prove his innocence or produce any evidence at all" should be *written down* and entrusted to the jurors during their deliberations. Spoken words are transient in nature. The instruction to the jury is in the jury room. There can be no argument. It comes from the judge and it is there in black and white.

During voir dire, Arroyo's statements explained the State's burden, but did not explain that he did not need to sustain a burden. "That's the State's burden. That goes to the presumption of innocence and beyond a reasonable doubt." These statements did not reveal the nature of Arroyo's presumed innocence and the only way that it could be overcome. Stating only that "Mr. Tony Arroyo is innocent," while true until he is proven guilty beyond a reasonable doubt, is not the functional equivalent of stating that he may be acquitted on the basis of this presumption.

We note that Arroyo emphasized at various points throughout voir dire the burden of proof and the standard of reasonable doubt needed to overcome Arroyo's presumption of innocence. Without the court's imprimatur in the jury charge, these statements need not be accepted by the jury, although they are true.

Arroyo did not present any evidence or witnesses to prove his innocence. He was not required to. Failing to remind the jury specifically and clearly of the right *not* to present evidence was harmful. Arroyo had the right to expect the law, as fashioned by the Court of Criminal Appeals, to be given. It matched the defensive strategy. The State said in closing argument that Arroyo "made a 'big deal' about reasonable doubt" throughout the entire trial. So he did. He had the right to. It *is* a "big deal."

The charge as a whole does not cure the omission of the *Geesa*-mandated language. The court instructed the jury, "Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty." This language does not bear a sufficient nexus to the language required by *Geesa* regarding the presumption of innocence that Arroyo has, and that such presumption alone "is sufficient to acquit" him. The court further instructed, "Do not let bias, prejudice or sympathy play any part in your deliberations." This instruction does not admonish the jurors to acquit Arroyo on his presumption of innocence unless they "are satisfied beyond a reasonable doubt of the defendant's guilt after *careful* and impartial consideration *of all the evidence* in the case."

Arroyo's defense during voir dire, opening statements, and closing arguments was based upon "reasonable doubt" and the proper burden of production. Arroyo did not present any evidence or witnesses. Because Arroyo did not present any evidence or witnesses, he was harmed by a jury charge that failed to explain he had no burden of production and that this lack of production on *his* part should not detract from any *doubt* that the jurors have about his innocence. In light of statements by counsel and the court that are embedded in the record of this trial that spanned three days, the absence of the instruction caused Arroyo to suffer actual harm.

The jury's *deliberations,* by their nature, defy a meaningful harm analysis. We recognize that the jury charge is the formal device for putting the law into the jury's hands. The improper jury charge was physically given to the jury at the time when the jury retired for deliberations. The jury charge is a potent piece of paper. Its designated use is to assist the jury members during deliberations. It was the last message from the court. It remained with the jury during their deliberations. It needed to be right. The trial court undercut a legitimate defense argument by not allowing the requested language. Failing to tell the jury that "[t]he law does not require a defendant to prove his innocence or produce any evidence at all" or "[t]he presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case" are not trivial matters. These instructions are at the heart of a mandated instruction from the Texas Court of Criminal Appeals.

## CONCLUSION

Considering Arroyo's defense, the proper objection and tender, and the critical nature of a proper jury charge, we find that the trial court's error was harmful. We reverse and remand.