Marc W. Brown, Justice
A jury convicted appellant Daniel Antonio Ferrer of murder and sentenced him to life imprisonment with a $10,000 fine. See Tex. Penal Code Ann. § 19.02 (West 2017). In one issue, appellant argues the trial court erred during the punishment phase by admitting evidence of an extraneous bad act. We affirm the judgment.
I. BACKGROUND
On May 23, 2015, complainant Francisco Capetillo-Medina was shot to death in broad daylight in front of a convenience store. Investigating officers were able to obtain surveillance video of the shooting, but the investigation stalled until investigators received a Crime Stoppers tip implicating appellant. Appellant was subsequently charged with the offense of murder pursuant to section 19.02 of the Texas Penal Code. Appellant pleaded not guilty, and the case proceeded to a jury trial.
Appellant claimed that, on the morning of the murder, he was told an individual (or individuals) in a red car were planning to rob him. Appellant obtained a revolver and asked his girlfriend, Jennifer Lainez, *117 to pick him up in her car so they could find the person or persons he believed were after him. When appellant and Lainez found what they believed to be the same red car parked in front of a convenience store, appellant got out of Lainez's car and approached the red car. Appellant briefly confronted complainant, who was seated in the driver's seat of the red car. Appellant then shot complainant five times at point-blank range while complainant remained seated in the car. After the shooting, appellant fled back to Lainez's car, and she drove away from the scene. Complainant died as a result of being shot.
Later the same day, appellant confessed what he had done to complainant to his friend, Cody Wooldridge. Wooldridge contacted Crime Stoppers and reported what appellant had told him. Investigators followed up on the Crime Stoppers tip, and appellant was taken into custody in August 2015. At that time, appellant was interviewed by a homicide detective, and again, appellant confessed what he had done.
The State presented evidence showing appellant did not know complainant and killed him due to mistaken identity. Appellant's video-taped confession was published to the jury during the testimony of the homicide detective who interviewed appellant. In the video, appellant stated he was lied to or played for a dummy. The officer who interviewed appellant testified that he understood this to mean "someone had played a trick on [appellant] and sat [sic] up this guy to be killed." The officer testified appellant "knew that he got the wrong guy." The officer further testified that, in his investigation, he found no evidence complainant was affiliated with a gang or had any criminal history.
Appellant's girlfriend, Lainez, also testified as part of the State's case-in-chief. While surveillance video of the shooting played, Lainez explained the circumstances and identified her vehicle and appellant in the video. Lainez's testimony took place on Tuesday, October 25, 2016. Although Lainez was an important witness for the State, her testimony conflicted with earlier statements she had made to the prosecutor and police. For the first time, Lainez testified appellant was in an "altercation" with persons prior to the murder and at least one of those persons had a gun. She also claimed for the first time that she and appellant began searching for a red car because of the earlier altercation. During her testimony, Lainez initially admitted her story had changed. Lainez also admitted she had talked to appellant three days before testifying, but she denied talking to him about the case. Later in her testimony, when asked if she had discussed the case with appellant, Lainez invoked her Fifth Amendment right against self-incrimination and refused to answer.
The State requested records of appellant's jail phone calls in August 2015. That request yielded no call records. The custodian of the jail call records testified that on September 30, 2015, he performed a search of appellant's calls from August 3, 2015 to September 30, 2015, which revealed no calls. The State did not make another request for appellant's jail calls prior to Lainez's testimony that she had recently talked with appellant. The evening or the next day after Lainez testified (October 25, 2016 or October 26, 2016), the State again requested copies of appellant's jail call recordings.
On Wednesday, October 26, 2016, the guilt/innocence phase of trial concluded. The jury convicted appellant of murder. By that evening, the State had received a copy of appellant's jail call recordings. The prosecutor returned to his office after the trial recessed for the day. The prosecutor listened to the recordings and discovered a significant call had taken place on the first *118 day of trial, Friday, October 21, 2016. In the call, appellant urged (and yelled at) Lainez not to appear to testify, "to plead the fifth." Appellant also said he wanted to "beat the ass" of his own attorney and Wooldridge. The prosecutor immediately notified appellant's trial counsel by email that the prosecution intended to present this newly discovered extraneous evidence during the punishment phase of trial, which was to begin the next day, October 27, 2016. The prosecutor filed an Additional Notice of Intention to Use Evidence of Recently Discovered Extraneous Offenses on October 26, 2016, that listed the recorded call.[1] The prosecutor also made a copy of the recording available to appellant's trial counsel the same night.
Appellant's trial counsel was not able to listen to the recording until the next morning, immediately before the punishment phase of trial. At that time, appellant's trial counsel had one and a half hours to review and consider the 11-minute recording.[2] Appellant's trial counsel objected to the admission of the recording, and in the alternative, requested additional time from the trial court. The trial court allowed for a 30-minute recess so appellant's trial counsel could confer with appellant. After the recess, appellant's trial counsel again objected to the admission of the recording, arguing he had received insufficient notice of recording. The trial court overruled the objection and found, "based on the circumstances and facts involved, this [was] not an unreasonable notice." The court further found there was no evidence the State withheld the evidence from the defense, "intentionally or otherwise."
Appellant's trial counsel then moved for a continuance of three days to investigate the call, speak with the witness and defendant, and research case law. The trial court denied the motion.[3] The recording was admitted as State's Exhibit 82 in the State's punishment case-in-chief the same day (October 27, 2016). Evidence of appellant's other extraneous offenses, including possession of marijuana, burglary, injury to a child, and trespass, was also presented. At the conclusion of the punishment phase of trial, the jury sentenced appellant to life imprisonment with a $10,000 fine.
II. ANALYSIS
In appellant's sole issue, he argues the trial court "committed reversible error admitting evidence of an extraneous bad act," the October 21, 2016 jail call recording, "even though appellant was not notified of the State's intent to use evidence of the bad act until the punishment phase of trial" (capitalization omitted). Appellant admits *119 there is no evidence the prosecutor improperly withheld evidence but argues the prosecutor "intentionally waited until the middle of trial and the eve of punishment to begun [sic] looking for this devastating punishment evidence." Appellant asserts the prosecutor intentionally delayed his investigation "knowing that whatever information turned up would violate article 37.07(3)(g) and the discovery requirements in article 39.14."
A trial court has broad discretion to admit or exclude extraneous offense evidence. See McDonald v. State , 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) ; Brooks v. State , 76 S.W.3d 426, 435 (Tex. App.-Houston [14th Dist.] 2002, no pet.). During the punishment phase of a trial, article 37.07 of the Texas Code of Criminal Procedure permits the introduction of evidence of extraneous offenses committed by a defendant to the extent the court deems the evidence relevant to sentencing. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (West 2017). If the defendant requests notice of the State's intent to use an extraneous offense during the punishment phase, then the State must provide it in the same manner required by rule 404(b) of the Texas Rules of Evidence. Id. § 3(g). Rule 404(b) requires that, on timely request, "reasonable notice" be given by the State of its intent to introduce evidence of other crimes, wrongs, or acts by the defendant. Tex. R. Evid. 404(b). The reasonableness of the State's notice generally turns on the facts and circumstances of each case. Sebalt v. State , 28 S.W.3d 819, 822 (Tex. App.-Corpus Christi 2000, no pet.) ; Patton v. State , 25 S.W.3d 387, 392 (Tex. App.-Austin 2000, pet. ref'd).
Article 39.14, often referred to as the "Michael Morton Act," contains provisions relating to the State's duty to provide discovery to criminal defendants. As it existed at the time of appellant's offense, article 39.14 required as follows:
[A]s soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or of a witness, ..., or any designated books, accounts, letters, photographs, or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.
Tex. Code Crim. Proc. Ann. art. 39.14(a) (West 2014) (emphasis added).
The trial court is the authority on the admissibility of relevant evidence during the punishment phase. Mitchell v. State , 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). An appellate court reviews a trial court's ruling on the admissibility of extraneous-offense evidence for an abuse of discretion. McDonald , 179 S.W.3d at 576 ; Brooks , 76 S.W.3d at 435. A reviewing court should not reverse a trial court whose ruling was within the "zone of reasonable disagreement." Patton , 25 S.W.3d at 394 (citing Montgomery v. State , 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) ).
Given the circumstances presented in this case, it was not beyond the zone of reasonable disagreement for the trial court to hold that the jail call recording, State's Exhibit 82, was admissible. The record indicates the State provided supplemental notice to appellant's trial counsel as soon as it found out about the October 21, 2016 recording. Appellant admits "[t]here is no *120 indication the prosecutor intentionally withheld State's exhibit 82."
Appellant argues the admission of the late-noticed recording violates article 37.07, section 3(g), because the article requires notice be provided in the same manner required by rule 404(b), and the plain language of rule 404(b) requires notice be provided "in advance of trial." Appellant has not cited, nor have we found, any authority suggesting mid-trial notice of extraneous evidence is unreasonable per se under article 37.07, section 3(g).
The requirement that notice be given in advance of trial is not stated in article 37.07, section 3(g). Indeed, "there is no bright line as to the number of days or amount of time alone [that] constitutes reasonable notice" under article 37.07, section 3(g). Id. at 393 (citing Ramirez v. State , 967 S.W.2d 919, 923 (Tex. App.-Beaumont 1998, no pet.)). The reasonableness of the State's notice turns on the facts and circumstances of each individual case. Id. at 392. As appellant concedes, "given the timing of the phone call, it would have been impossible for the prosecutor to produce State's exhibit 82 until after trial had already begun." We reject appellant's argument that the admission of the late-noticed recording violates article 37.07, section 3(g), merely because notice was not provided "in advance of trial."[4]
Appellant next argues the prosecutor "intentionally waited until the middle of trial and the eve of punishment to begun [sic] looking for this devastating punishment evidence." Appellant urges this court not to consider the timing of the phone call, claiming "regardless of when Appellant's misconduct took place, it is evident that the State had every intention of ambushing him with whatever evidence turned up." The record does not support this argument or show the trial court abused its discretion by concluding otherwise.
The timing of the phone call undermines appellant's "ambush" argument. Three business days passed between the jail call and the prosecutor's notice to appellant's trial counsel. One business day passed between Lainez's testimony that she talked to appellant before testifying and the prosecutor's notice to appellant's trial counsel.
*121 The State had previously requested a copy of appellant's jail calls. Appellant made no calls during the period that was examined, and the State did not renew its request prior to trial. The State renewed its request after Lainez changed her account of the circumstances surrounding the murder, admitted to speaking to appellant days prior to testifying, and later pleaded the fifth when asked if she had spoken to appellant about the case. The court could have rationally concluded that the prosecutor's decision to re-request appellant's jail calls was not an attempt to ambush appellant, but rather arose from the prosecutor's attempt to investigate whether Lainez changed her testimony after speaking with appellant.
Appellant also complains the prosecutor intentionally delayed his investigation of the evidence, "knowing that whatever information turned up would violate ... article 39.14." Appellant does not elaborate on how article 39.14 was violated or why such violation requires reversal. Although appellant's trial counsel objected to the admission of the late-noticed recording as a violation of the trial court's discovery order, appellant has not pointed this court to the discovery order he claims was violated.[5] We conclude appellant's complaint of an article 39.14 violation is waived for inadequate briefing. See Tex. R. App. P. 38.1(i). Further, if the issue was adequately briefed, nothing in the record suggests the State violated article 39.14. The State attempted to make the recording available to appellant's trial counsel the same day the recording was received. Appellant's trial counsel accessed the recording the following day. We are satisfied the State complied with the requirements of article 39.14 and provided discovery in its possession, custody, or control "as soon as practicable."
The trial court did not err in admitting the extraneous offense evidence during the punishment phase.
III. CONCLUSION
The judgment of the trial court is affirmed.

Approximately three months prior to trial, on July 27, 2016, appellant had filed a Request for Notice of Intent to Offer Evidence of Conviction under Rule 609(f) and of an Extraneous Crime or Bad Act under Article 37.07, requesting that the State give "reasonable notice of intent to introduce against the defendant evidence of an extraneous crime or bad act at the punishment phase of trial." Appellant also filed Defendant's Motion for Discovery and Inspection, pursuant to article 39.14 of the Texas Code of Criminal Procedure, requesting the trial court instruct the prosecutor to make appellant's recorded statements available. That same day, the State file a Notice of Intention to Use Evidence Pursuant to Texas Rules of Criminal Evidence 404, 609, and 37.07(g), listing various extraneous offenses and prior adjudications the State intended to offer as evidence, not including any recorded jail calls.

Brief portions of the tape were in Spanish. The trial court provided an interpreter to appellant's trial counsel to interpret the Spanish portions. While objecting to admission of the recording, appellant's trial counsel stated, "I'm not concerned with the Spanish part, but the English part is disturbing."

Appellant does not challenge on appeal the trial court's refusal to grant this motion for continuance.

The principles underlying the "forfeiture by wrongdoing" doctrine also support the trial court's decision to admit the evidence and weigh against appellant's argument that notice must be provided in advance of trial. The forfeiture-by-wrongdoing doctrine is an equitable exception to a defendant's Sixth Amendment right to be confronted with the witnesses against him. Gonzalez v. State , 195 S.W.3d 114, 116-17 (Tex. Crim. App. 2006). Although the doctrine itself does not apply here, the principles underlying the doctrine are relevant. "The doctrine is based on the principle that 'any tampering with a witness should once for all estop the tamperer from making any objection based on the results of his own chicanery.' " Id. at 117 (citing 5 John H. Wigmore , Evidence § 1406 at 219 (Chadbourn rev. 1974)). "In other words, the rule is based on 'common honesty' and the maxim that 'no one shall be permitted to take advantage of his own wrong.' " Id. (quoting Reynolds v. United States , 98 U.S. 145, 159, 25 L.Ed. 244 (1878) ).
Appellant attempted to coerce Lainez not to testify against him. His objection to the consequences of "his own chicanery," the recording of his coercive conversation with Lainez, understandably, was not well-received. Appellant's objection resulted from his own wrong and his own timing. As the State points out, if mid-trial notice of an extraneous evidence was unreasonable per se, defendants would be free to commit witness tampering or other bad acts during trial, and their acts would not be considered during sentencing so long as a request for notice was filed before trial. This would be an absurd result, particularly in light of the principles underlying the "forfeiture by wrongdoing" doctrine. Appellant should not be permitted to take advantage of his own wrong.

As it existed at the time of appellant's offense, article 39.14 did not require a motion or order; it simply required a request. See Tex. Code Crim. Proc. Ann. art 39.14(a) (West 2014). However, appellant did not make a request; he filed a motion requesting "the Court instruct the prosecutor to make available before trial ... recorded statements allegedly made by the Defendant." No order or ruling on that motion appears in the record.