

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00384-CR

SAMUEL ALAN TUCKER,

Appellant

v.

THE STATE OF TEXAS,

Appellee

**From the 12th District Court
Walker County, Texas
Trial Court No. 27,546**

## MEMORANDUM OPINION

Appellant Samuel Alan Tucker was convicted by a jury of the offense of evading arrest or detention with a vehicle. The jury also found that Tucker used a deadly weapon (his vehicle) during the commission of the offense. The jury assessed a sentence of fifteen years. Tucker's sentence was enhanced by a prior felony conviction.

Tucker presents two issues on appeal: (1) the trial court erred in admitting an extraneous conviction (a misdemeanor DWI); and (2) the trial court failed to properly charge the jury on the deadly weapon special issue. We will affirm.

## *Background*

The underlying facts are not disputed. The events leading to Tucker's conviction began when Tucker failed to stop after rear-ending another vehicle at a traffic light. The driver of the other vehicle suffered serious injuries and was taken to the hospital. A description of Tucker's vehicle was broadcast to law enforcement. Independent of that broadcast, Tucker was spotted driving erratically by an off-duty Texas Ranger, Steven Jeter, who attempted to detain Tucker when Tucker stopped at a red light. Jeter was in his off-duty vehicle and was not in uniform, and Tucker did not stop. Jeter called 911 to report Tucker and continued to follow Tucker while reporting their location.

Deputy Joe Jeffcoat was first dispatched to the wreck, but then responded to the locations being provided by Jeter. Jeffcoat and Sergeant Eddie Lawson, in marked vehicles, caught up to Tucker and attempted to get Tucker to stop, using their lights and sirens. Jeffcoat, who was in the unit directly behind Tucker, also used his public address system to direct Tucker to pull over. This only resulted in Tucker increasing his speed. Tucker did not stop until he arrived at his residence, and the deputies then took him into custody. When Tucker's vehicle was searched, officers found an empty beer can and four prescription pill bottles in Tucker's name. Two of the prescriptions were for Oxycontin and hydrocodone. At sentencing, the jury was informed that Tucker had a blood alcohol concentration of 0.127 grams of alcohol per 100 milliliters of blood.

Tucker did not appear after the first day of trial, and the trial was continued in his absence. Tucker's attorney presented no witnesses or exhibits, although he subjected the State's witnesses to cross-examination and otherwise challenged the State's case.

*Analysis*

A. Extraneous Offense. During the punishment phase, the State offered evidence that Tucker had previously been convicted of a misdemeanor DWI. Tucker objected, asserting that he had been given notice that the conviction would be used against him only the evening before, which was a violation of the trial court's standing discovery order.

We review a trial court's admission of evidence for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm that decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will uphold a trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

Upon timely request of a defendant, the State is required to provide notice that it intends to introduce evidence at punishment of the defendant's other crimes, wrongs, or bad acts during its case-in-chief. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1), (g) (West Supp. 2018). The notice is to be given in the manner required by Rule 404(b) of the Texas Rules of Evidence. *Id.*, § 3(g). Here, the State notified Tucker months before trial began, in compliance with the trial court's standing discovery order, of Tucker's arrest for the misdemeanor DWI as part of Tucker's criminal history. The State did not, however, amend its notice after Tucker's DWI conviction became final until the day before the evidence was offered at trial. The prosecutor informed the trial court that the information had only recently been discovered. Given those circumstances, it was not

beyond the zone of reasonable disagreement for the trial court to hold that the misdemeanor conviction was admissible. *See Ferrer v. State*, 548 S.W.3d 115, 119-20 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd).

Even assuming that the trial court erred in admitting the extraneous offense, we conclude any error was harmless. Error in the admission of evidence is nonconstitutional error. *Gonzalez*, 544 S.W.3d at 373; *see also Luna v. State*, 301 S.W.3d 322, 326 (Tex. App.— Waco 2009, no pet.). Nonconstitutional errors require reversal only if they affect an appellant's substantial rights. *Gonzalez*, 544 S.W.3d at 373; TEX. R. APP. PROC. 44.2(b). The Court of Criminal Appeals has construed this to mean "that an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict." *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). In assessing a nonconstitutional error, we examine whether the purpose of the statute or rule violated was thwarted by the error. *Roethel v. State*, 80 S.W.3d 276, 281 (Tex. App.—Austin 2002, no pet.) (citing *Ford v. State*, 73 S.W.3d 923, 925-26 (Tex. Crim. App. 2002)). The purpose of § 3(g) is to avoid unfair surprise and to enable a defendant to prepare to answer the extraneous offense evidence. *Apolinar v. State*, 106 S.W.3d 407, 414-15 (Tex. App.— Houston [1st Dist.] 2003), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005); *Roethel*, 80 S.W.3d at 282. This analysis requires the reviewing court to examine the record to determine whether the deficient notice resulted from prosecutorial bad faith or prevented the defendant from preparing for trial. *Roethel*, 80 S.W.3d at 282. Tucker does not argue that the prosecutor acted in bad faith. Tucker objects only to the lack of notice,

not to the admissibility of the misdemeanor conviction itself. *See McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005).

In determining whether the late notice prevented the defendant from preparing for trial, the court reviews whether the defendant was surprised by the substance of the notice and whether that affected his ability to prepare cross-examination or mitigating evidence. *Roethel*, 80 S.W.3d at 282. "Accordingly, we look only at the harm that may have been caused by the lack of notice and the effect the lack of notice had on the appellant's ability to mount an adequate defense." *McDonald*, 179 S.W.3d at 578 (citation omitted). Tucker does not allege that the lack of notice prevented him from presenting a defensive strategy, mounting a defense, or introducing mitigating evidence. If the misdemeanor DWI conviction was a legitimate surprise that required a re-evaluation of Tucker's strategy at the punishment phase, he could have requested a continuance or a postponement. His failure to do so precludes us from holding that, even if there was error in the admission of the misdemeanor DWI conviction, the error was harmful. *See Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982) ("The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise."); *see also McDonald*, 179 S.W.3d at 578 ("[Had] there been legitimate surprise that required a re-evaluation of trial strategy, the appellant could have requested a continuance."). For these reasons, Tucker's first issue is overruled.

B. Charge Error. Tucker next asserts that the trial court erred in failing to instruct the jury that the State had the burden to prove beyond a reasonable doubt that Tucker used a deadly weapon. A claim of jury-charge error is reviewed using the procedure set

out in *Almanza*. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). The first step is to determine whether there is error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). As the State concedes error, we proceed to determine whether a harm analysis is appropriate. *See Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

A charge that excludes an instruction on reasonable doubt, or that misdefines the State's burden of proof as being less than beyond a reasonable doubt, constitutes structural error that is not subject to harmless-error review. *See Olivas v. State*, 202 S.W.3d 137, 142-43 (Tex. Crim. App. 2006); *see also State v. Toney*, 979 S.W.2d 642, 644-45 (Tex. Crim. App. 1998) ("If there is a total omission of the instruction on reasonable doubt, such error defies meaningful analysis by harmless-error standards."). When, however, a jury is given a partial or substantially correct charge on reasonable doubt, then the error is subject to a harmless-error analysis under *Almanza*. *Olivas*, 202 S.W.3d at 143-44 (citing *Toney*, 979 S.W.2d 642). While the charge in this case includes an instruction on reasonable doubt, the "deadly weapon" issue does not explicitly incorporate the beyond-a-reasonable-doubt burden of proof. The charge deficiency is not structural error, however, because the "jury instructions did not totally omit any reference to proof beyond a reasonable doubt, nor did those instructions mis-direct the jury concerning that burden of proof." *Olivas*, 202 S.W.3d at 145.

If a charge error is properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza*, 686 S.W.2d at 171; *see also Brock v. State*, 495 S.W.3d 1,

13 (Tex. App.—Waco 2016, pet. ref'd). Conversely, if error is not preserved at trial by proper objection, a reversal will be required "only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id*.; *see also Riggs v. State*, 482 S.W.3d 270, 273 (Tex. App.—Waco 2015, pet. ref'd). The inquiry is fact specific and performed on a case-by-case basis, and the defendant must have suffered actual, not theoretical, harm. *Gelinas v. State*, 398 S.W.3d 703, 710, 724 (Tex. Crim. App. 2013); *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012).

Tucker did not object to the trial court's failure to include a reasonable doubt instruction specifically linked to the deadly weapon finding, requiring Tucker to establish that he suffered "egregious" harm in order to prevail on appeal. In evaluating whether egregious harm has occurred, we analyze the following: 1) the entire jury charge; 2) the state of the evidence, including the contested issues and the weight of probative evidence; 3) the arguments of counsel; and 4) any other relevant information revealed by the record as a whole. *Riggs*, 482 S.W.3d at 273; *Olivas*, 208 S.W.3d at 144.

*Olivas* presents a factual background that is remarkably similar to this case. Olivas was convicted of a variety of offenses including four counts of evading arrest by fleeing from the police and using his vehicle as a deadly weapon. The charge and verdict in

Olivas's case also did not require the jury to make the deadly weapon finding beyond a reasonable doubt. Because of the similarities, *Olivas* is instructive in our analysis.

In regard to the first factor, the jury instructions repeatedly note that the State has the burden to prove the elements of the offense beyond a reasonable doubt. The section entitled "Burden of Proof" includes the following instruction:

> The burden of proof through the trial is always on the state. The defendant does not have the burden to prove anything. The state must prove every element of the offense beyond a reasonable doubt to establish guilt for the offense. If the state proves every element of the offense beyond a reasonable doubt, then you must find the defendant guilty. If the state does not prove every element of the offense beyond a reasonable doubt, then you must find the defendant not guilty. If, after you have considered all the evidence and these instructions, you have a reasonable doubt about whether the defendant is guilty, you must find the defendant not guilty.

The charge also includes references to reasonable doubt in the sections entitled "Presumption of Innocence," "The Verdict," and "Application of Law of [sic] Facts." The verdict questions for both evading arrest and use of a deadly weapon do not set out any explicit burden of proof. There was, however, no mention in the charge that any other burden of proof was applicable or that Tucker might have some burden of proof on any issue or fact.

> [W]ith both the "guilty" or "not guilty" verdict forms and the deadly weapon issue, the jury was required to refer back to the general instruction. And those instructions clearly told the jury that the State had the burden to prove, beyond a reasonable doubt, every element of the offense. On the other hand, . . . the term "deadly weapon" was never defined as an element of the offense, and the guilty verdict finding was separate from the deadly-weapon finding, indicating that the use of a deadly weapon was not an element of the evading arrest offense itself. Thus, it is possible, when viewing the written jury instructions in isolation, that the jury might have

thought that neither the State nor appellant had any burden of proof on this question.

*Olivas*, 202 S.W.3d at 146-47. We hold that the first factor is not determinative.

Second, we must look to the state of the evidence and the contested issues. The primary disputed issue at trial was Tucker's intent—in relation to both the evading and deadly weapon issues. The testimony of Jeter and Jeffcoat, as well as the dash-cam video, illuminate the danger Tucker posed on the night he fled from law enforcement. The dash-cam video showed that Tucker was unable to maintain a straight course, weaving from lane to lane and off the side of the road. He traveled significant periods of time in the left lane and narrowly missed a number of oncoming vehicles. When Jeffcoat used his public address system to tell Tucker to stop, Tucker accelerated. Tucker also sped through what appeared to be a construction zone, mowing down reflective posts on the side of the road. When Tucker took an abrupt turn down a smaller road, the move almost resulted in a collision between Jeffcoat and Lawson. Tucker then hit the ditch at least twice, driving through heavy foliage. Jeter's testimony detailed other instances of Tucker's reckless driving that occurred prior to the beginning of the video—Tucker ran through stop signs, passed vehicles on the right shoulder, and accelerated quickly when Jeter attempted to stop him.

"A conclusion that a car is a deadly weapon 'requires evidence that others were endangered, and not merely a hypothetical potential for danger if others had been present.'" *Olivas*, 202 S.W.3d at 147 (quoting *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001)). As in *Olivas*, there is ample

evidence that Tucker's use of his vehicle posed an actual danger of death or serious bodily injury to others. In contrast to *Olivas*, Tucker's driving was captured on Jeffcoat's dash-cam video, enabling the jurors to view the actual, rather than hypothetical danger, Tucker posed to others. As Jeter noted, "Ten years as a trooper, I'm going to tell you, this is one of the most impaired vehicles I've ever seen in my career as a trooper, and in my last nine years as a Ranger. I've never seen a car in motion that bad."

Tucker has not shown that the jury likely used some standard other than "beyond a reasonable doubt" to make its deadly weapon finding. The evidence is sufficient to support such a finding beyond a reasonable doubt and is sufficiently conclusive to make the second factor determinative.

Even if the second factor is insufficient in itself to establish that Tucker did not suffer egregious harm, it is sufficient when considered along with the other factors. In regard to the closing arguments, both the prosecutor and Tucker's attorney mentioned reasonable doubt. Defense counsel argued reasonable doubt a number of times, although his main focus was on Tucker's intent. Tucker's attorney argued:

> *As far as this deadly weapon charge*, again, okay, I'm going to ask you all not to sign that. All right? There is a certain county south of here that came up with an idea of starting to charge people with deadly weapon with a vehicle and that was not the Legislative intent. Okay. They came up with that to find something else to throw at people and that's not what it was supposed to be used for. Okay. So I'm going to say, don't sign that. *And again, the main thing is, they didn't meet their burden*. There is no intent there. So I'm going to ask y'all to go back there and sign not guilty, put them to their job.

While attenuated, the argument at least infers that the State has the burden of proving beyond a reasonable doubt that Tucker used his vehicle as a deadly weapon. The jury arguments did not, however, explicitly inform the jury that they could not answer the deadly-weapon issue affirmatively unless they found that the State had carried its burden of proof "beyond a reasonable doubt." The jury arguments are not, therefore, definitive by themselves.

The fourth factor requires the reviewing court to look at any other relevant information. As previously noted, Tucker did not return to court after the first day of trial. There is nothing in the record to indicate that the jury was provided any explanation for Tucker's absence, leaving it free to infer that Tucker's absence was indicative of his guilt.

There is nothing in the record that suggests that the jury ignored the burden of proof or failed to apply it correctly. After a review of the entire record, we cannot say that omission of the burden of proof for the deadly weapon finding from the jury charge, while erroneous, resulted in egregious harm—"that type and level of harm which affects 'the very basis of the case,' deprived [the defendant] of a 'valuable right,' or 'vitally affect[ed] a defensive theory.'" *Olivas*, 202 S.W.3d at 149 (quoting *Almanza*, 686 S.W.2d at 172). We therefore overrule Tucker's second issue and affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
    (Chief Justice Gray concurs in the Court's judgment to the extent it affirms the trial court's judgment. A separate opinion will not issue.)
Affirmed
Opinion delivered and filed November 21, 2018
Do not publish
[CR25]

