**Opinion filed October 27, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00025-CR

_____

**JAIME BRITO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR50331**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Jaime Brito, of evading arrest or detention with a vehicle. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A) (West 2016). The jury also found "true" to two prior convictions alleged by the State for enhancement purposes. The jury assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of fifty

years. Appellant presents two issues in which he complains of evidence admitted during the punishment phase of trial. We modify and affirm.

## Background Facts

On August 27, 2017, at around 11:30 p.m., two deputies from the Midland County Sheriff's Office were dispatched to a call involving a dark-colored, "bigger" Dodge pickup traveling eastbound from Odessa to Midland at a high rate of speed and in a reckless manner. The deputies began traveling westbound on Highway 80 around Loop 250 in their marked patrol vehicles in search of the pickup. They observed an eastbound pickup matching the description of the reported vehicle. One deputy, using his radar gun, determined that the pickup was traveling over 115 miles per hour.

The two deputies crossed the center median and began traveling eastbound on Highway 80 in an attempt to catch up to the pickup. Appellant, the driver of the pickup, used Highway 80's on-ramp to Loop 250 and began traveling along Loop 250. The lead deputy activated his emergency lights after he watched the driver of the pickup cut off several vehicles at an intersection. Appellant then exited Loop 250 and began traveling on the southbound service road of Interstate Highway 20 (I-20). While pursuing the pickup, the lead deputy saw Appellant frequently veer into "the wrong side of the road" to pass other vehicles and almost lose control of the pickup.

Appellant eventually stopped about 200 feet past the intersection of I-20 and Jasmine Road in Midland. The deputies had pursued Appellant with both patrol vehicles' emergency lights activated and one patrol vehicle's siren activated for at least a mile before Appellant came to a stop. The deputies then conducted a felony traffic stop. Appellant was arrested and transported to jail.

Appellant absconded on the second day of the guilt/innocence phase of his trial. The trial continued, and the jury found Appellant guilty of the offense of evading arrest or detention with a vehicle as charged in the indictment. The case proceeded to the punishment phase in Appellant's absence, and the jury assessed Appellant's punishment at confinement for a term of fifty years. Nineteen months later, after Appellant was apprehended, the trial court sentenced him. Appellant's appeal focuses on the punishment phase—specifically, the trial court's admission of photographs of Appellant's tattoos and subsequent testimony that the tattoos indicated that Appellant was a member of a gang.

*Analysis*

In his first issue, Appellant contends that the trial court abused its discretion in admitting evidence of Appellant's gang membership based on an alleged lack of notice. The State contends that Appellant did not preserve this complaint for appellate review because he did not object, at the time the evidence was admitted, as previously instructed to do so by the trial court.

"As a prerequisite to presenting a complaint for appellate review," a party must have made a timely request, objection, or motion to the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). The trial court must then either "(A) rule[] on the request, objection, or motion, either expressly or implicitly; or (B) refuse[] to rule on the request, objection, or motion, and the complaining party objected to the refusal." TEX. R. APP. P. 33.1(a)(2). Appellant contends that he did not receive timely notice of the State's intent to offer evidence of Appellant's gang membership. His trial counsel made this complaint on multiple occasions at trial.

3

We direct our attention to matters discussed by the trial court and counsel prior to the punishment phase. The prosecutor advised the trial court that the State intended to offer evidence of Appellant's gang affiliation at punishment. Appellant objected to this evidence on the basis of inadequate notice that hampered Appellant's trial preparation. The prosecutor responded to this complaint by indicating that the State was not able to confirm Appellant's gang membership until "just before" providing notice to Appellant's trial counsel. The prosecutor further responded that Appellant had not filed any discovery motions, and that Appellant was therefore not entitled to notice of the State's intent to introduce evidence of Appellant's gang membership and expert testimony about gangs. Appellant did not dispute this point at trial and conceded that he did not file discovery motions, but he maintained that the State's "spring[ing] up a witness at the last minute" disadvantaged Appellant because it was "standard procedure" for the State to provide notice.

The prosecutor also explained that his original plan was to prove Appellant's gang membership by having photographs of Appellant's tattoos taken in court during trial. However, due to Appellant's decision to abscond during trial, the State needed to find an alternative means of introducing Appellant's tattoos into evidence. Thus, the State informed the trial court that it planned to call a DPS investigator to testify that the DPS gang database had an entry for Appellant that included photographs of Appellant's tattoos so that the State could offer the photographs into evidence.

After hearing arguments from the prosecutor and Appellant's trial counsel, the trial court made the following announcement:

> What I'm going to do is go ahead and let Lieutenant Davis testify, Officer Claire, and Investigator Marks, pertaining to the subjects which [the prosecutor] went over earlier. And when you make your objection, [Appellant's trial counsel], in front of the jury, then the Court will grant you a running objection as to the line of questioning,

4

the answers given, and any comment by opposing counsel during closing statements.

Appellant made no further objections or requests that the trial court give a final ruling on his objection based on lack of notice.

When the DPS investigator was called to testify during the punishment phase, Appellant's trial counsel asked to approach the bench. After a *sotto voce* discussion as to the scope of the DPS investigator's testimony, Appellant clarified that he would not have an objection "[a]s long as it's just factual testimony, but if he's an expert, then I'm going to have an objection to him, similar to the one I made on [the gang expert]." The trial court instructed Appellant to "make [his] objections as we go along."

Despite the trial court's instruction, Appellant never made an objection based on lack of notice during the DPS investigator's testimony—even when the DPS investigator's testimony extended past authenticating the photographs from the gang database and into his knowledge of the tattoos' meanings and the gang's activities. Instead, Appellant made three other objections throughout the DPS investigator's testimony: lack of authentication, hearsay, and relevance. The State's gang expert was not called and did not testify, and the trial court proceeded to the charge conference after the DPS investigator's testimony concluded.

The State asserts on appeal that the trial court did not make a ruling on Appellant's complaint of lack of notice because it instructed Appellant's trial counsel to make his objection in front of the jury. We disagree. Prior to making the statement to Appellant's trial counsel, the trial court stated that it was going to let the State's witnesses testify on the subjects indicated by the prosecutor, which included Appellant's gang membership. This comment constituted a ruling on Appellant's objection based on lack of notice. Furthermore, because the trial court made this ruling outside the presence of the jury, Appellant was not required to

renew the objection in the presence of the jury to preserve error. *See* TEX. R. EVID. 103(b).

We review a trial court's evidentiary ruling under an abuse of discretion standard. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016). "A trial judge abuses his discretion when his decision falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). We will uphold the trial court's ruling on the admission or exclusion of evidence if the ruling was proper under any legal theory or basis applicable to the case. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

Appellant asserted that he did not have enough time to prepare an adequate defense to the gang expert's testimony based on the short notice provided by the State. The reasonableness of the State's notice under Article 37.07, section 3(g) and Rule 404(b) of its intent to use extraneous offenses at the punishment phase generally turns on the facts and circumstances of each case. *Ferrer v. State*, 548 S.W.3d 115, 119 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (West Supp. 2022); TEX. R. EVID. 404(b). "[T]here is no bright line as to the number of days or amount of time alone [that] constitutes reasonable notice" under Article 37.07, section 3(g) or Rule 404(b). *Ferrer*, 548 S.W.3d at 120 (second alteration in original) (quoting *Patton v. State*, 25 S.W.3d 387, 393 (Tex. App.—Austin 2000, pet. ref'd)).

The State provided reasonable responses to Appellant's objection based on lack of notice. The State informed the trial court that it had amended its notice of extraneous offenses to include evidence of Appellant's gang membership the day before the start of the guilt/innocence phase of trial because the State did not receive confirmation that Appellant was a confirmed gang member until then. Further, the State asserted that the need for the photographs of Appellant's tattoos only came

about because of Appellant's decision to abscond. Finally, the State informed the trial court that Appellant was not entitled to notice due to his failure to file any discovery motions. Thus, the record does not demonstrate that the trial court abused its discretion in determining that the State gave reasonable notice of its intent to introduce evidence of Appellant's gang membership.

We note that Appellant asserts for the first time on appeal that he was also entitled to timely notice because an oral request for the State's compliance with Article 39.14 was made before trial began. *See* CRIM. PROC. art. 39.14. Appellant contends that "[w]hile nothing in the record indicates Appellant filed a written request for discovery, nothing in Article 39.14 requires the request be in writing. An oral request for discovery would be sufficient to invoke Article 39.14." Appellant cites no case law in support of this proposition. Appellant also argues that his oral request under Article 39.14 required the State to comply and provide all punishment evidence to Appellant, "including testimony regarding gang membership and State's Exhibit Nos. 24 through 28 relating to proof of said gang membership, *regardless of any other statute or rule of evidence*" (emphasis added). Appellant cites to *Watkins v. State*, 619 S.W.3d 265 (Tex. Crim. App. 2021), in support of this proposition.

While the facts of *Watkins* are similar in that it discusses whether the trial court erred in admitting evidence in the punishment phase of trial, the main issue in *Watkins* concerns the definition of "material" in Article 39.14(a). *See Watkins*, 619 S.W.3d at 271. Regarding discovery requests, *Watkins* states that "[w]ith the exception of privileged evidence and evidence specifically covered by other statutory provisions, the only obstacle to disclosure of evidence not already covered by Article 39.14(h) is the lack of a specific request." *Id.* at 278. Thus, *Watkins* does not expand the definition of a proper request for discovery under Article 39.14 to

7

include an oral request. Without a record showing the specific items for which Appellant sought discovery under Article 39.14, we are unable to determine that the trial court abused its discretion by admitting the items into evidence. *See Davy v. State*, 525 S.W.3d 745, 750–51 (Tex. App.—Amarillo 2017, pet. ref'd).

Moreover, irrespective of Appellant's contention that oral discovery requests under Article 39.14 are proper, the record does not show that an oral request for discovery was made. In support of his assertion on appeal that an oral request was made prior to trial, Appellant references the "State's Certification of Discovery for Trial Under Article 39.14 C.C.P." The State's Certification includes language that the listed discovery was turned over to the defense "after the above-named Defendant requested discovery." However, the State repeatedly informed the trial court that Appellant had not filed any discovery motions. Appellant's trial counsel did not refute the State's claims, nor did he assert that an oral request for discovery had been made. Had Appellant made an oral discovery request under Article 39.14, one would assume that his trial counsel would have corrected the State's contention that no discovery requests were made by Appellant.

In light of the foregoing, the trial court had no reason to believe that Appellant made an oral discovery request under Article 39.14. Furthermore, we are unable to determine that the trial court abused its discretion without a record of the particular discovery request that Appellant alleged he made. *See id.* Thus, the trial court's determination that Appellant received adequate notice lies within the zone of reasonable disagreement and was not an abuse of discretion. We overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court abused its discretion when it admitted evidence of Appellant's gang membership. He contends that this evidence was illegally obtained. Specifically, Appellant asserts that the gang

8

database entry pertaining to Appellant was created in violation of his *Miranda*[1] rights. In support of this contention, Appellant contends that the gang database entry exists solely because of Appellant's nonjudicial self-admission, which was made during a custodial interrogation conducted without Appellant's waiver of his *Miranda* rights. Therefore, Appellant contends, the gang database entry—which included photographs of Appellant's tattoos and Appellant's nonjudicial self-admission—should not have been admitted. However, Appellant did not present any of these contentions to the trial court for consideration.

Appellant's second issue has not been properly preserved for review on appeal. The Texas Court of Criminal Appeals "has consistently held that in order to complain about the admissibility of an admission or confession there must be an objection thereto in the trial court. The objection must call the attention of the trial court to the *particular complaint* raised on appeal." *Fancher v. State*, 659 S.W.2d 836, 839 (Tex. Crim. App. 1983) (emphasis added); *see Ex parte Bagley*, 509 S.W.2d 332, 333 (Tex. Crim. App. 1974) ("[I]n order to complain about the admissibility of a confession, even in regard to a violation of *Miranda*, and other federally guaranteed constitutional rights, there must be an objection in the trial court.").

Appellant did not object on the basis of a *Miranda* violation to the admissibility of the gang database entry, the tattoo photographs,[2] or the nonjudicial self-admission at trial. Rather, the only trial objections to the gang database entry

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] We note that in *Martin v. State*, we determined that the display of a defendant's tattoos to the jury is not a violation of the right against self-incrimination. 570 S.W.3d 426, 438–39 (Tex. App.—Eastland 2019, pet. ref'd) (citing *Canales v. State*, 98 S.W.3d 690, 697 (Tex. Crim. App. 2003)). We held that the display of a defendant's tattoo is not a compelled testimonial communication, and that an accused can be compelled to disclose a tattoo to the jury irrespective of its location on the accused's body. *Id.* (citing *Sauceda v. State*, 309 S.W.3d 767, 769 (Tex. App.—Amarillo 2010, pet. ref'd)).

9

and its contents were lack of notice, lack of authentication, hearsay, and relevance. Therefore, Appellant did not preserve the alleged *Miranda* violation for appellate review because he did not object in the trial court on that basis. *See Ex parte Bagley*, 509 S.W.2d at 333.

We have already determined that the trial court did not abuse its discretion in admitting the tattoo photographs over Appellant's objection based on lack of notice. Appellant does not assert on appeal that the trial court's decision to overrule his objections based on lack of authentication, hearsay, and/or relevance was an abuse of discretion. Rather, Appellant contends that the trial court erred by admitting evidence that was obtained illegally—a point that has not been preserved for appellate review. Accordingly, we overrule Appellant's second issue.

Although not raised by Appellant, the State asserts that the district clerk erroneously assessed court-appointed attorney's fees against Appellant. We agree.

An indigent defendant cannot be taxed the cost of services rendered by his court-appointed attorney unless the trial court finds that the defendant has the financial resources to repay those costs in whole or in part. *Smith v. State*, 631 S.W.3d 484, 501 (Tex. App.—Eastland 2021, no pet.) (citing *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)); *see* CRIM. PROC. art. 26.05(g). The Texas Court of Criminal Appeals has held that the trial court must find that the defendant had the ability to repay court-appointed attorney's fees prior to assessing such fees against an indigent defendant. *Cates v. State*, 402 S.W.3d 250, 251–52 (Tex. Crim. App. 2013); *see also Mayer*, 309 S.W.3d at 556 ("[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees."). Further, a "defendant who is determined by the [trial] court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case

unless a material change in the defendant's financial circumstances occurs." *Cates*, 402 S.W.3d at 251 (quoting CRIM. PROC. art. 26.04(p)).

On July 3, 2018, Appellant filed an affidavit of indigence certifying that he did not have the necessary funds to hire an attorney for his defense for the instant case. The trial court determined that Appellant was indigent and appointed trial counsel to represent Appellant in this case. Subsequent to this appointment, Appellant hired counsel of his own to represent him in this case. The trial court granted Appellant's motion to substitute counsel on October 1, 2018. Despite Appellant's decision to hire counsel, the trial court did not issue a finding that Appellant had the ability to pay any portion of the attorney's fees that were incurred by his court-appointed attorney.

After trial, Appellant's retained attorney filed a motion to withdraw. In the order granting counsel's motion to withdraw, the trial court once again appointed counsel for Appellant to represent him on appeal. Nothing in the record indicates that the trial court made a subsequent determination that Appellant's financial circumstances had materially changed or that he had the financial resources or ability to pay the court-appointed attorney's fees of $250 that were assessed against him. Because the trial court ordered Appellant to pay all costs and the district clerk improperly assessed the attorney's fees incurred by his court-appointed attorney as costs against Appellant, we modify the trial court's judgment and order the district clerk to remove the improperly assessed fees. *See Cates*, 402 S.W.3d at 252; *Smith*, 631 S.W.3d at 501.

Here, the trial court's judgment orders Appellant to pay "all costs in this proceeding incurred . . . [including] all court costs, fines, fees, assessments and restitution." The district clerk's amended bill of costs erroneously includes attorney's fees as reimbursement costs for which Appellant is

11

responsible. Accordingly, we modify the trial court's judgment to clarify that "all court costs, fines, fees, assessments and restitution" does not include court-appointed attorney's fees. In addition, we modify the district clerk's bill of costs to delete the court-appointed attorney's fees assessed against Appellant. *See* TEX. R. APP. P. 43.6 ("The court of appeals may make any other appropriate order that the law and the nature of the case require.").

*This Court's Ruling*

We modify the trial court's judgment and the district clerk's bill of costs to delete (1) the court-appointed attorney's fees that were assessed against Appellant and (2) the trial court's requirement that Appellant pay such fees. As modified, we affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

October 27, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

12