**Opinion filed August 15, 2019**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-17-00208-CR**

_____

**LUIS REY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-45,435**

**M E M O R A N D U M   O P I N I O N**

The jury convicted Luis Rey of murder and aggravated assault with a deadly weapon. The jury then assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of life for the offense of murder and for a term of twenty years for the offense of aggravated assault. The trial court ordered that the sentences are to run concurrently.

In four issues on appeal, Appellant contends that the trial court abused its discretion when it (1) excluded evidence of Appellant's diminished capacity during

the guilt/innocence phase, (2) excluded lay testimony during the punishment phase of Appellant's alleged mental issues, (3) admitted character and extraneous offense evidence during punishment, and (4) admitted photographs into evidence that Appellant asserted were cumulative, inflammatory, and gruesome. We affirm.

*Background Facts*

On July 5, 2017, Appellant purchased a shotgun and went to the residence of Pilar and Profirio Regalado, Appellant's aunt and uncle. Appellant was seventeen years old at the time. Appellant shot Pilar in the neck and attempted to shoot Profirio. Profirio fought with Appellant and eventually took the shotgun away from Appellant. After disarming Appellant, Profirio located Pilar on the floor in the living room and called 9-1-1. Appellant left the residence, and he also called 9-1-1. Pilar died as a result of the shotgun wound to her neck.

Odessa Police Officer Chris Meise testified that he initially responded to a disturbance call at the Regalado residence. However, he was then dispatched to a location within the immediate area of the residence. When he arrived, he came in contact with Appellant, who was wearing a white shirt with bloodstains. Officer Meise placed Appellant under arrest and transported him to the police department.

Odessa Police Officer Brad Cline interviewed Appellant at the police department. During the interview, Appellant confessed to the shooting and discussed the details of the shooting with Officer Cline. However, Appellant did not tell Officer Cline why he committed the shooting. Appellant stated that he did not have "a reason" and that he did not know why he shot his aunt—the idea just "popped" into his head. Officer Cline testified that Appellant showed "zero emotion" during the interview.

Appellant testified on his own behalf during the guilt/innocence phase. He testified that he shot Pilar and attempted to shoot Profirio. Appellant also testified

that he called the police because he was afraid that Profirio was going to shoot him. When asked at trial why he shot his aunt, Appellant stated that he did not have a motive.

Dr. Roddy Marlene Strobel, a psychiatrist, testified during the punishment phase that she evaluated Appellant and determined that he was competent to stand trial and that he did not have a diagnosable mental illness. She also testified that Appellant was evaluated by a psychologist, Dr. Jarvis Wright, who determined that Appellant was sane at the time of the offense.

*Exclusion of Evidence*

In his first issue, Appellant contends that the trial court erred when it excluded evidence of Appellant's diminished capacity during the guilt/innocence phase. Appellant asserts that the evidence of his mental health problems was admissible because it negated the *mens rea* element of the indicted crimes and because the State opened the door to this evidence.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016) (citing *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011)). A trial judge abuses his discretion when his decision falls outside the zone of reasonable disagreement. *Id.* (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)).

There is no affirmative defense of "diminished capacity" in Texas, other than insanity. *Ruffin v. State*, 270 S.W.3d 586, 593 (Tex. Crim. App. 2008); *Jackson v. State*, 160 S.W.3d 568, 573 (Tex. Crim. App. 2005). However, diminished capacity is recognized as a simple "failure-of-proof defense in which the defendant claims that the State failed to prove that the defendant had the required state of mind at the time of the offense." *Jackson*, 160 S.W.3d at 573. As with other elements of the offense, the defendant may present relevant evidence negating the requisite

3

*mens rea*. *Ruffin*, 270 S.W.3d at 594. This evidence may include evidence of a defendant's history of mental illness or evidence of a defendant's physical or mental diseases or defects. *Id.* at 593–94. However, the evidence still must meet the applicable requirements for the admission of evidence and may be excluded at the guilt/innocence stage if it does not truly negate the required *mens rea*. *Id.* at 595–96.

The indictment charged Appellant with murder under two of the three statutorily defined ways to commit the offense. *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (West 2019). Under these two statutory provisions, a person commits the offense of murder if he (1) "intentionally or knowingly causes the death of an individual" or (2) "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." *Id.* Murder is a result-oriented offense. *See Martin v. State*, 570 S.W.3d 426, 434 (Tex. App.— Eastland 2019, pet. ref'd). Each statutory method for committing murder has a different *mens rea* component. Under Section 19.02(b)(1), the *mens rea* element requires that the accused must have intentionally or knowingly caused the death of the victim. *See Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994). Under Section 19.02(b)(2), the *mens rea* element requires that the accused must have intended to cause serious bodily injury to an individual. *See Stobaugh v. State*, 421 S.W.3d 787, 861 (Tex. App.—Fort Worth 2014, pet. ref'd). Thus, a conviction under subsections (b)(1) and (b)(2) requires an intent to either cause death or cause serious bodily injury to the victim.

Appellant was also charged by indictment with committing aggravated assault by intentionally or knowingly threatening Profirio with imminent bodily injury with a firearm. *See* PENAL §§ 22.01(a)(2), 22.02(a)(2). Aggravated assault by threat is a "nature of conduct" offense that has no required result. *Landrian v. State*, 268

4

S.W.3d 532, 536–37 (Tex. Crim. App. 2008). Section 6.03 of the Penal Code defines "intentionally" and "knowingly" as follows:

> (a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> (b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

PENAL § 6.03(a), (b) (West 2011).

The State filed two motions in limine regarding Appellant's diminished capacity. The trial court granted both motions. Later during trial, Appellant requested permission to introduce testimony from Appellant's mother, Maribel Cano, regarding Appellant's mental conditions. Appellant made an offer of proof as to Maribel's testimony. Maribel testified that, before Appellant was born, he was deprived of oxygen and had hydrocephaly, which she described as "water in the brain." She further testified that only half of Appellant's neurons are "working" and the "other ones are dead." Maribel stated that doctors were not able to help Appellant because his issues were mental, not physical. When asked what was wrong with Appellant's mind, Maribel testified as follows: "My son constantly would see things. He would see children. He would see men that had knives in their hands and tried to kill him." Maribel testified that Appellant had not received any treatment for these alleged conditions since he was an infant.

The State objected to the admission of Maribel's testimony, asserting that diminished capacity is not a recognized defense in Texas and that the testimony is not relevant because Maribel was not a qualified expert. The State also argued that

the testimony would be prejudicial to the State and misleading and confusing to the jury. The trial court sustained the State's objection.

Appellant did not contend that he was suffering from a mental defect or delusion that caused him to shoot Pilar or attempt to shoot Profirio. Furthermore, Maribel did not assert that Appellant was suffering from a mental defect or delusion at the time of the shooting. Accordingly, Maribel's proffered testimony did not negate the required *mens rea* of Appellant intentionally or knowingly causing the death or serious bodily injury to his aunt or intentionally or knowingly threatening his uncle with imminent bodily injury with a deadly weapon. Moreover, Texas courts typically exclude testimony that attempts to communicate the actual subjective mental state of another person because "[i]t is impossible for a witness to possess personal knowledge of what someone else is thinking." *Fairow v. State*, 943 S.W.2d 895, 899 (Tex. Crim. App. 1997); *Winegarner v. State*, 505 S.W.2d 303, 305 (Tex. Crim. App. 1974) ("[S]ince one person cannot possibly know another's state of mind, his testimony is necessarily based on conjecture."), *overruled on other grounds by White v. State*, 576 S.W.2d 843, 845 n.1 (Tex. Crim. App. 1979). Therefore, the trial court did not abuse its discretion by determining that Maribel's proffered testimony was impermissible evidence of diminished capacity. *See Jackson*, 160 S.W.3d at 574–75.

Appellant also contends that the State opened the door to evidence regarding Appellant's diminished capacity. Otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered "opens the door." *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009). A party opens the door by leaving a false impression with the jury that invites the other side to expose, correct, or rebut the false impression. *Id.* As we noted in *Kinsey v. State*, the concept of opening the door is an aspect of relevancy that can make otherwise nonrelevant evidence relevant. *Kinsey v. State*, No. 11-12-00102-CR, 2014 WL 2459690, at *11 (Tex.

6

App.—Eastland May 22, 2014, no pet.) (mem. op., not designated for publication). The party that seeks to offer evidence under the doctrine may not "stray beyond the scope of the invitation." *Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997) (quoting *Bush v. State*, 773 S.W.2d 297, 301 (Tex. Crim. App. 1989)). Furthermore, "'[o]pening the door' or 'inviting' testimony that would otherwise pertain to an inadmissible subject matter does not mean that such testimony is necessarily 'invited' into evidence in any form." *Kipp v. State*, 876 S.W.2d 330, 337 (Tex. Crim. App. 1994).

Appellant argued that the State opened the door to evidence regarding Appellant's diminished capacity by introducing Appellant's entire recorded custodial confession to Officer Cline. In the recording, Appellant told Officer Cline that maybe his brain made him shoot Pilar, and Officer Cline asked Appellant if he had any mental problems or had been to see a doctor. Appellant responded that, when he was born, "they told [his] mom that [he had] something on [his] brain—liquid." Appellant contends that this admission of this portion of the interview by the State opened the door to Maribel's proffered testimony. We disagree.

From Appellant's perspective, Appellant's statement that "they told [his] mom that [he had] something on [his] brain" did not create a false impression with the jury. Thus, by seeking to offer Maribel's proffered testimony, Appellant was not seeking to correct or refute his statement but, rather, to expand on or bolster his statement by presenting additional evidence regarding his mental health condition. Thus, Maribel's proffered testimony did not correct a false impression created by the State. Additionally, even if the State opened the door to diminished capacity evidence, the proffered testimony from Maribel pertaining to Appellant's state of mind at the time of the shooting would have been excludable based on conjecture. *See Winegarner*, 505 S.W.2d at 305. Accordingly, the trial court did not abuse its

discretion when it excluded evidence of Appellant's diminished capacity. We overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court erred when it excluded evidence of his diminished capacity during the punishment phase. Appellant asserts that his family members should have been allowed to testify as to all aspects of his diminished capacity of which they were personally familiar, including but not limited to, his previous diagnoses of autism and hydrocephaly.

In all criminal cases, after a finding of guilt, both parties may offer any evidence relevant to sentencing. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2018); *Mendiola v. State*, 21 S.W.3d 282, 284 (Tex. Crim. App. 2000). The determination of what is "relevant" in regard to punishment "should be a question of what is *helpful to the jury in determining the appropriate sentence* in a particular case." *Mendiola*, 21 S.W.3d at 285 (quoting *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim App. 1999)). Under Article 37.07, section 3(a), the following nonexclusive list is evidence that may be deemed "relevant" during punishment:

> [T]he prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible[.]

CRIM. PROC. art. 37.07, § 3(a)(1). Testimony regarding a defendant's mental illness may be relevant for mitigation purposes during the punishment phase even if it is not admissible as evidence of diminished capacity during the guilt/innocence phase. *Mays v. State*, 318 S.W.3d 368, 381 (Tex. Crim. App. 2010).

Appellant contends that expert testimony is not required to present evidence of a defendant's mental health issue. This statement is only partially correct. Although a lay witness is generally competent to testify as to the facts surrounding

8

a medical condition, a lay witness may not give opinions as to cause, diagnosis, or treatment of medical problems. *Miracle v. State*, 604 S.W.2d 120, 127 (Tex. Crim. App. 1980). Accordingly, lay witnesses can only describe symptoms they believe might be relevant to the defendant's mental state. *See Jackson v. State*, 992 S.W.2d 469, 473 (Tex. Crim. App. 1999) (distinguishing testimony that a psychiatrist can provide about a defendant's mental condition from a lay witness's testimony, "who can merely describe symptoms they believe might be relevant to the defendant's mental state") (quoting *Ake v. Oklahoma*, 470 U.S. 68, 80–82 (1985)).

During the punishment phase, Appellant requested permission to introduce testimony from Maribel and also from Britania Nalia Cano, Appellant's sister, that Appellant suffered from autism. Appellant did not request permission to introduce testimony during the punishment phase regarding whether Appellant had suffered hydrocephaly. Accordingly, Appellant has not preserved this issue with respect to whether Appellant had hydrocephaly. *See* TEX. R. APP. P. 33.1(a); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003) (stating that, "[t]o preserve error for appellate review under Rule 33.1(a), the record must show that . . . the complaining party made a timely and specific request, objection, or motion"). Appellant did not make a bill of exception. The trial court stated that it would allow testimony regarding Appellant's actions during his childhood and adolescence but that it would not allow lay testimony regarding a medical diagnosis of autism because a diagnosis requires expert knowledge. Appellant subsequently presented testimony from his father and Britania at punishment concerning problems that Appellant had at birth and Appellant's being "held back" in high school. Britania testified as follows: "My brother, there's something wrong with him. Because if you're to see him, he doesn't cry. He doesn't laugh. . . . [H]e doesn't show any emotions. So I know there has to be something wrong."

Although Maribel and Britania were generally competent to testify about the facts and symptoms surrounding Appellant's alleged mental issues, they were not competent to give opinions as to the cause, diagnosis, or treatment for Appellant's mental issues. *See Miracle*, 604 S.W.2d at 127. There was no evidence that either Maribel or Britania had any medical background or training. Accordingly, the trial court did not abuse its discretion in excluding testimony from lay witnesses about the diagnoses of Appellant's alleged mental issues. *See id.* We overrule Appellant's second issue.

*Timely Disclosure of Extraneous Evidence*

In his third issue, Appellant contends that the trial court abused its discretion when it admitted character and extraneous offense evidence. Appellant contends the State failed to provide reasonable notice under Article 37.07 of the Texas Code of Criminal Procedure and Rule 404b of the Texas Rules of Evidence. Appellant asserts that he did not have adequate time to investigate and to prepare a defense to any character or extraneous offense evidence. Appellant specifically objected to the admission of a video of an extraneous offense.

Article 37.07 states: "On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence." CRIM. PROC. art. 37.07, § 3(g); *see Leza v. State*, 351 S.W.3d 344, 359 (Tex. Crim. App. 2011). Rule 404(b), in turn, requires "reasonable notice" in advance of trial of the State's intent to introduce extraneous conduct evidence, but it does not directly speak to a level of specificity. TEX. R. EVID. 404(b)(2); *Leza*, 351 S.W.3d at 359. The purpose of Article 37.07, section 3(g) is to allow the defendant adequate time to prepare for the introduction of evidence, which avoids unfair surprise and trial by ambush. *Andrews v. State*, 429 S.W.3d 849, 860 (Tex. App.—Texarkana 2014, pet. ref'd).

Appellant filed a request for notice of the State's intent to introduce extraneous offenses under Article 37.07, section 3(g) and Texas Rule of Evidence 404(b) on October 14, 2015. The State sent a supplemental notice to Appellant on July 17, 2017, which was two weeks before the trial date of July 31, 2017. The notice described disciplinary incidents involving Appellant in the Ector County Jail, including "multiple assaults as a West Texas gang member and in conjunction with West Texas." The notice included a description of one of these assaults, which occurred on June 22, 2017—Appellant was "1 OF 5 WEST TEXAS INMATES WHO ASSAULTED WALKER." The notice also included a memorandum written by Corporal Luis Burrola on July 14, 2017, alleging that Appellant was affiliated with the "West Texas" gang and that he was involved in multiple assaults with other gang members.

The reasonableness of the State's notice under Article 37.07, section 3(g) and Rule 404b of its intent to use extraneous offenses at the punishment phase generally turns on the facts and circumstances of each case. *Ferrer v. State*, 548 S.W.3d 115, 119 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). "[T]here is no bright line as to the number of days or amount of time alone [that] constitutes reasonable notice" under Article 37.07, section 3(g) or Rule 404(b). *Id.* at 120 (second alteration in original) (quoting *Patton v. State*, 25 S.W.3d 387, 393 (Tex. App.—Austin 2000, pet. ref'd)). The record does not demonstrate that the trial court abused its discretion by determining that the State gave reasonable notice of Appellant's gang affiliation and disciplinary incidents in the Ector County Jail. The State gave Appellant two weeks' notice of its intent to introduce this evidence. The State's written notice detailed information of various disciplinary incidents that occurred at the jail, and it included information about Appellant's gang affiliation. The written notice also contained information about the assault by Appellant along with four other inmates in the West Texas gang upon another inmate. This assault occurred on June 22,

2017, and it was disclosed to Appellant in the notice on July 17, 2017. Thus, Appellant had notice of the State's intent to introduce evidence of the assault eleven days prior to the delivery of the video depicting the assault. The entire video is less than four minutes long, and the portion capturing the assault is approximately one minute long. Thus, the trial court did not abuse its discretion in finding that the State provided Appellant with reasonable notice of the extraneous offenses that it sought to offer during the punishment phase. We overrule Appellant's third issue.

*Admission of Evidence*

In his fourth issue, Appellant contends that the trial court abused its discretion when it admitted photographs that he asserts were cumulative, inflammatory, and gruesome. Appellant asserts that the admission of this evidence violated Texas Rule of Evidence 403.

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed" by the danger of unfair prejudice. TEX. R. EVID. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). To determine whether the probative value of the photographs is substantially outweighed by the danger of unfair prejudice, we consider several factors, including the number of exhibits offered, the gruesomeness of the photographs, how much detail is shown, the size of the photographs, whether they are in color or black and white, whether they are close-up, and whether the body depicted is clothed or naked. *Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010).

Appellant objected to eight still photographs of the crime scene that were offered by the State. The eight photographs depicted the deceased victim's clothed body, a shotgun wound to the victim's neck, and a large amount of blood. Four of the photographs were taken from different vantage points that were a significant

12

distance away from the victim. The other four photographs were taken closer to the victim: each one showing different pieces of evidence near the victim. Two of the photographs show the full body of the victim while the others only capture a partial view of the victim. The shotgun wound is at least partially visible in six of the photographs.

The trial court could have reasonably concluded that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice. The photographs are probative of the nature of the crime and the manner of the victim's death. While the photographs are gruesome—showing the shotgun wound in the victim's neck and blood—they are no more gruesome than the injuries that Appellant inflicted upon the victim when he committed the offense of murder. *Shuffield*, 189 S.W.3d at 787–88 (photographs show only the injuries that the victim received and are no more gruesome than would be expected); *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997) (photographs are no more gruesome than the facts of the offense itself); *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995) (recognizing no error if gruesome crime scene photographs depict nothing more than reality of brutal crime committed).

Additionally, Appellant asserts that these photographs were inadmissible because they were cumulative of a video recording of the crime scene that the State offered into evidence. However, the Court of Criminal Appeals has held that a videotape and still photographs are not entirely cumulative of each other. *Ripkowski v. State*, 61 S.W.3d 378, 392 (Tex. Crim. App. 2001); *Ladd v. State*, 3 S.W.3d 547, 568–69 (Tex. Crim. App. 1999); *Matamoros v. State*, 901 S.W.2d 470, 476 (Tex. Crim. App. 1995). A videotape provides a jury with an overall perspective that is simply not available from still photographs. *Matamoros*, 901 S.W.2d at 476. While still photographs offer an isolated and fixed content, a video recording allows a more panoramic representation of the evidence. *Id.* A photograph, on the other

hand, permits a jury to examine a scene in detail. *Id.* Each of the eight photographs depicts a different view of the victim and her injuries, while the video recording provides an overall perspective that the photographs do not offer. Thus, the photographs were not necessarily cumulative of the recording of the crime scene. Accordingly, the trial court did not abuse its discretion by admitting the photographs. We overrule Appellant's fourth issue.

*This Court's Ruling*

We affirm the judgments of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

August 15, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.

14